UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JANARIUS ELANJWE NANJE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO. 14-12216-JGD |
| LUIS A. CHAVEZ, et al., | ) | |
| | ) | |
| Defendants, | ) | |

## MEMORANDUM OF DECISION AND ORDER
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

September 28, 2015

DEIN, U.S.M.J.

### I.  INTRODUCTION

The plaintiff, Janarius Elanjwe Nanje ("Nanje"), is a citizen of Cameroon and a lawful

permanent resident of the United States.  He is married to a United States citizen, and has four

minor children, all of whom are United States citizens as well.  On May 19, 2014, Nanje initiated

this action, pursuant to Section 310(c) of the Immigration & Nationality Act ("INA"), 8 U.S.C.

§ 1421(c), against the defendants, Luis A. Chaves, the Lawrence Field Office Director for the U.S.

Citizenship and Immigration Service ("USCIS"), Jeh Johnson, the Secretary of the U.S. Depart-

ment of Homeland Security, and Alejandro Mayorkas, the Director of USCIS.  By his Petition for

Review of Denial of Naturalization, Nanje is seeking a *de novo* review of the defendants' denial

of his application for naturalization, and an order allowing him to become a naturalized citizen

of the United States.

The matter is presently before the court on the "Defendants' Motion for Summary Judgment" (Docket No. 19) and on the "Plaintiff's Cross-Motion for Summary Judgment" (Docket No. 26).  By their motions, each of the parties contends that it is entitled to judgment as a matter of law in this case.  The critical issue that has been raised by the parties' motions is whether Nanje's 2006 conviction for filing a false health care claim constituted a conviction for an "aggravated felony."  Under the relevant provision of the INA, an "aggravated felony" is defined to include "an offense that . . . involves fraud or deceit in which the loss to the victim or victims exceeds $10,000."  8 U.S.C. § 1101(a)(43)(M)(i).  There is no dispute that Nanje was convicted of a crime involving fraud or deceit.  Consequently, the only question at issue is whether the plaintiff can prove, by a preponderance of the evidence, that the loss incurred by the victim was $10,000 or less.

Pursuant to the relevant authority established by the Supreme Court, the loss to the victim must be determined based on the factual circumstances surrounding the commission of the crime on a specific occasion.  Because the facts and circumstances underlying the conviction at issue in this case demonstrate that the loss to the victim exceeded $10,000, this court has no choice but to conclude that Nanje cannot make the requisite showing.  Therefore, and for all the reasons detailed below, the defendant's motion for summary judgment is ALLOWED and the plaintiff's cross-motion is DENIED.

## II.  <u>STATEMENT OF FACTS</u>[1]

The following facts are undisputed for purposes of summary judgment.

The plaintiff, Nanje, is a native and citizen of the Central African country of Cameroon. (DF ¶ 1).  However, he attended college in the United States, and has been a lawful permanent resident of this country since 2002.  (<u>Id.</u> ¶ 2; Def. Ex. J at 7 of 24).  In addition, all of Nanje's close family members reside in the United States, and both his wife and four minor children are United States citizens.  (Def. Ex. J at 7 of 24).  In this action, Nanje is challenging the USCIS' denial of his application for naturalization.

### <u>Circumstances Surrounding Nanje's Criminal Conviction</u>

The plaintiff's eligibility for naturalization depends upon whether his prior conviction for filing a false health care claim constitutes an "aggravated felony" under the INA, which in turn depends upon whether his offense involved fraud or deceit and a loss of more than $10,000 to the victim.  The undisputed facts demonstrate that Nanje's conviction arose out of a criminal complaint that was issued against him on March 15, 2005 in Boston Municipal Court ("BMC"). (<u>See</u> DF ¶ 13).  The complaint charged Nanje with two counts of filing a false health care claim, in violation of Mass. Gen. Laws ch. 175H, § 2; one count of larceny over $250, in violation of Mass. Gen. Laws ch. 266, § 30(1); and one count of attempted larceny, in violation of Mass.

---

[1]  Unless otherwise indicated, the facts are derived from the defendants' statement of facts ("DF"), which is set forth on pages 1 through 11 of their Memorandum of Law in Support of Defendants' Motion for Summary Judgment (Docket No. 20), and from the documents attached to the Declaration of AUSA Christine Wichers in Support of Defendants' Motion for Summary Judgment ("Def. Ex. __") (Docket No. 21).  The plaintiff does not dispute the defendants' statement of facts, or its exhibits, both of which he has incorporated by reference into his Memorandum of Law in Support of Plaintiff's Cross-Motion for Summary Judgment.  (Docket No. 27 at 2).

Gen. Laws ch. 274, § 6.  (Id. ¶ 14).  A "Statement of Probable Cause," which was attached to the

criminal complaint, described the circumstances leading up to the charges as follows:

> Janarius Nanje submitted a claim to Harvard Pilgrim Health Care (HPHC) in Quincy, MA in July 2003 for treatment of malaria and typhoid fever he alleged he received at District Hospital Nkondjock in Cameroon (Africa) from June 15 through July 7, 2003.  HPHC paid the $11,965 claim without requesting further documentation from Mr. Nanje.
>
> On June 23, 2004, Mr. Nanje submitted another claim to HPHC.  This claim totaled $29,150 for malaria treatment he alleged he received between April 4 and April 29, 2004 in Cameroon.  This claim raised concerns at HPHC.  HPHC Member Services spoke to Mr. Nanje in order to clarify whether the bill had been paid.  Mr. Nanje reported he paid in cash.  An investigator from HPHC contacted Mr. Nanje to ask him for documentation showing where he got the cash.  The HPHC investigator asked for bank statements to show cash withdrawals or anything else that would show that he had that much cash with him for his trip to Cameroon.  Over the telephone, Mr. Nanje reported that he only paid a portion of the bill in US currency.  He stated that he paid less than $10,000 in USD and his father paid the rest in Cameroon francs.  The investigator asked to see documentation of that; he again asked to see his bank statement.  Mr. Nanje stated he would send it to him.  On October 20, 2004, Mr. Nanje sent a letter to HPHC stating that his father paid the entire claim in cash in Cameroon francs so there was no record.
>
> The HPHC contacted Mr. Nanje requesting documents to support his claim before HPHC would pay the claim.  Mr. Nanje delivered original medical records to the Quincy office of HPHC on September 30, 2004.  The entire medical record which covers over two weeks appears to be written in the same handwriting.
>
> The Attorney General's office contacted a federal agent stationed in Cameroon who investigated the claim.  The hospital administrator in Cameroon reported that Mr. Nanje had never been treated at the District Hospital Nkondjock.  After seeing this documentation, Mr. Nanje admitted that he never received treatment for malaria and typhoid fever at the District Hospital Nkondjock in Cameroon.

(Def. Ex. D at 4 of 5 (emphasis added)).

On May 20, 2005, Nanje, who was represented by counsel, offered to tender an admission to facts sufficient to support a finding of guilty on each of the charges, on the condition that the matter be continued without a finding for eleven months, and that Nanje be placed on probation and ordered to pay $20,000 in restitution to HPHC.  (DF ¶ 17; Def. Ex. G). The Commonwealth agreed that Nanje should pay $20,000 in restitution to HPHC, but it recommended that he plead guilty to three counts of the four-count complaint, be placed on probation for two years, and complete 100 hours of community service.  (DF ¶ 18; Def. Ex. K at 6 of 8).   The proposed $20,000 payment was based on the nearly "$12,000 [that Nanje had] obtained from the first fraudulent claim and, as permitted by statute, $8,000 in expenses [that HPHC had] incurred in investigation of the fraudulent health care claims."  (DF ¶ 19 (quoting Def. Ex. K at 6 of 8)).

The court agreed to accept Nanje's tender, and to reduce the amount of restitution to $12,000 if Nanje agreed to make an immediate payment in full.  (DF ¶ 20).  The plaintiff agreed, and the court accepted the terms of his proposal.  (Id. ¶ 21).  Accordingly, on July 15, 2005, Nanje made the $12,000 payment and admitted to facts sufficient to support a finding of guilty on one count of filing a false health care claim, one count of larceny over $250, and one count of attempt to commit a crime.  (See id. ¶¶ 22-23; Def. Ex. H).  The matter was then continued without a finding for a period of nine months.  (DF ¶ 23; Def. Ex. H).

The plaintiff's plea agreement is documented on a form from the BMC entitled "Tender of Plea or Admission to Sufficient Facts Waiver of Rights."  (Def. Ex. H).  The "Dispositional Terms" set forth on the form show that Nanje agreed to pay a total of $12,000 in restitution in connection with each of the three counts for which he admitted facts.  (Id.).  Thus, the form lists

5

each of the counts separately, along with a notation indicating that the count was continued

without a finding for nine months, and the statement "$12,000.00 Restitution" next to it. (Id.).

It also contains a Judge's Certification, which was signed by the presiding judge on July 15,

2005. (Id.).  The Certification provides in relevant part as follows:

> I further certify that the defendant [Nanje] was informed and advised
> that if the defendant is not a citizen of the United States, a conviction of
> the offense with which the defendant is charged may have the conse-
> quences of deportation, exclusion from admission to the United States,
> or denial of naturalization pursuant to the laws of the United States.

(Id. (emphasis added)).  Therefore, the record indicates that Nanje should have been on

notice that his plea might adversely affect his ability to become a naturalized citizen.

Nanje complied with all of the terms and conditions of his probation, and the

criminal matter was dismissed on or about April 20, 2006.  (DF ¶ 24).  For purposes of

his Petition in this case, there is no dispute that Nanje was convicted in Massachusetts

state court of a crime involving fraud or deceit.  (Id. ¶ 3).

## Nanje's Efforts to Alter His Conviction

The record demonstrates that in the years following his conviction, Nanje attempted to

revise his criminal record so that it would not threaten his immigration status.  For instance, on

October 17, 2006, Nanje, who was again represented by counsel, moved to amend the criminal

complaint so that the larceny charge would read "Larceny Over $250 But Less Than $10,000."

(Id. ¶ 25).  However, that motion was denied on December 5, 2006.  (Id. ¶ 26).  Four years later,

on December 6, 2010, Nanje filed a motion requesting that the state court vacate his admission

to sufficient facts and grant him a new trial on the grounds that his criminal defense attorney

had deprived him of the effective assistance of counsel by failing to advise him of the potential

immigration consequences that could result from his plea.  (Def. Ex. J at 3 of 24 through 20 of

24).  That motion was denied as well on June 15, 2011.  (DF ¶ 29).

In a written decision supporting the denial of Nanje's motion to vacate, a Justice of the

BMC noted that the plaintiff, "an intelligent and educated individual," had signed a plea tender

affirming his understanding "that if he was not 'a citizen of the United States, conviction of this

offense may have the consequences of deportation, exclusion from admission to the United

States, or denial of naturalization.'"  (Def. Ex. K at 4 of 8 n.3).  Nevertheless, she gave him the

benefit of the doubt and held that Nanje had shown that his counsel had failed to provide him

with adequate legal advice.  (DF ¶ 31).  The court went on to hold, however, that Nanje could

not establish that his counsel's failure had caused him prejudice.  (Id. ¶ 32).  Specifically, after

reviewing the record before it, including the parties' proposed plea agreements and the

evidence on which the Commonwealth would have relied if the matter had gone to trial, the

court found that a better result for Nanje "was improbable." (See Def. Ex. K at 6 of 8 through 8

of 8).  Accordingly, it concluded that Nanje "has failed to demonstrate that advice concerning

immigration consequences would have made a difference to the outcome of this case, or that

he was prejudiced by admitting to the facts and having the case continued without a finding."

(Id. at 8 of 8).

### Revisions to Nanje's Criminal Record

While Nanje's second post-conviction motion was pending, the plaintiff submitted an

application for naturalization to the USCIS.  (DF ¶ 4).  However, Nanje subsequently withdrew

his application after his attorney advised him not to attend his naturalization hearing due to the

presence of an aggravated felony on his criminal record.  (DF ¶ 4; Def. Ex. L at 6 of 15).  He then

devoted his efforts to having the aggravated felony charge removed from his record so that he would be eligible to become a naturalized citizen.  (Def. Ex. L at 6 of 15).

On February 23, 2012, Nanje, through his counsel, filed a third post-conviction motion in the BMC in which he sought to revise and revoke his sentence.  (DF ¶ 34).  In support of his motion, Nanje explained that his attorney had failed to provide him with adequate advice regarding the immigration consequences of his plea, which he described in his motion as follows:

> The False Healthcare Claim count in the complaint is considered an aggravated felony by virtue of the $12,000 restitution that Mr. Nanje was required to pay.  The Immigration and Naturalization Act states that an aggravated felony includes an offense that "involves fraud or deceit in which the loss to the victim or victims exceeds $10,000."  8 U.S.C. § 1101 (a)(43)(M)(i).  An alien who is convicted of an aggravated felony at any point after entry to the United States is deportable under 8 U.S.C. § 1227 (a)(2)(A)(iii).  Under 8 U.S.C. § 1101(a)(43), a noncitizen with an aggra-vated felony is subject to mandatory deportation with virtually no relief or defense.  By virtue of the amount set out for restitution of the False Healthcare Claim count in the complaint against Mr. Nanje, he is subject to deportation for an aggravated felony.

(DF ¶ 36 (quoting Def. Ex. L at 5 of 15)).  Accordingly, Nanje requested that the court "revise his already-paid restitution amount so that the amount paid in restitution for the False Healthcare Claim count is under $10,000[,]" and that the court further "revise the restitution amounts for the other counts to reflect the total amount of $12,000 that he was required to pay."  (Def. Ex. L at 7 of 15).

There is no dispute that the requested revision "would be purely administrative[,]" and that the purpose of Nanje's motion was to minimize the possibility that he would have to face deportation.  (DF ¶¶ 38-39 (quoting Def. Ex. L at 10 of 15)).  On July 18, 2012, the court issued a margin order allowing "[the] motion to clarify docket as to amount of restitution that applies to

8

each count." (Def. Ex. L at 2 of 15).  As a result, the docket in Nanje's criminal case was revised

so that the $12,000 in restitution was divided equally between count one (for filing of a false

healthcare claim) and count three (for larceny over $250).  (Def. Ex. N at 4 of 13; see also Def.

Ex. M at 2 of 11 through 3 of 11).

Thereafter, Nanje filed a new application for naturalization.  (DF ¶ 5).  However, on

March 28, 2013, the USCIS issued a decision denying the application.  (Id.).  As the agency

explained in relevant part:

> the evidence shows that the loss to Harvard Pilgrim Health Care was over
> $10,000, and that loss is attributed to your conviction under Count I,
> Health Care Claim, False M.G.L. c.175H, S.6 regardless of a specific resti-
> tution amount, and that you have commited [sic] the aggravated felony.
>
> Your original plea agreement, the record of conviction, the revised record
> of conviction, and the records supporting the Motion to Revise and
> Revoke, all establish the amount of loss to be at least $12,000 in the
> aggregate.  Thus, the amount of loss, as referred to in INA section 101(a)
> (43)(M)(i), remains in excess of $10,000 despite the allocation of restitu-
> tion between the two separate counts, and even if one of those counts is
> a theft count.
>
> * * *
>
> Your conviction record shows that you did engage in a single scheme and
> a single course of conduct that resulted in a loss to the victim of at least
> $12,000.  Both charges of Count 1 and Count 3 occurred the same day on
> March 15, 2005, you pleaded guilty to both concurrently, and the plea
> agreement clearly shows that the $12,000 restitution was assessed under
> both counts.  The fact that the resulting restitution was further broken
> down and attributed to both counts in an equal measure of $6,000 is
> irrelevant.  The fact remains that your conviction includes an offense
> involving fraud or deceit in which the loss to the victim exceeded
> $10,000.

(Def. Ex. A at 3 of 4 through 4 of 4).  Therefore, it concluded that Nanje was unable to demon-

strate good moral character, and was permanently barred from eligibility for naturalization

under the INA.  (Id. at 4 of 4).  Nanje appealed the decision by filing a request for a hearing

before the USCIS.  (DF ¶ 6; Def. Ex. B at 2 of 8).

On November 6, 2013, while his appeal to the USCIS was still pending, Nanje filed a

Motion to Clarify in his criminal case.  (DF ¶ 41; Def. Ex. M).  Therein, the plaintiff asked the

BMC to "clarify that the total amount of loss attributable to the false health care claim charge is

no more than $6,000, and that this total amount of loss is separate and distinct from the loss

attributable to the larceny charge."  (DF ¶ 43 (quoting Def. Ex. M at 6 of 11)).  In support of his

motion, Nanje explained that the USCIS had denied his recent application for naturalization,

and was still treating his conviction as an aggravated felony, despite the revisions to the docket

in his criminal case.  (Id. ¶ 42).  He further explained that the continued treatment of his

conviction as an aggravated felony would render him "permanently deportable with no hope of

ever becoming a citizen[,]" and that the "interests of justice" would best be served if the court

were to grant him relief.  (Def. Ex. M at 3 of 11 and 6 of 11).  In addition, Nanje submitted a

proposed order that read:

> Upon consideration, the Court hereby clarifies the record as follows: The
> total amount of loss attributable to the false health care claim charge is
> equal to, and no more than, $6,000, and this total amount of loss is
> separate and distinct from the loss attributable to the larceny charge.
> Additionally, the total amount of loss attributable to the larceny charge is
> equal to, and no more than, $6,000, and this total amount of loss is
> separate and distinct from the loss attributable to the false health care
> claim charge.

(DF ¶ 45 (quoting Def. Ex. M at 9 of 11)).

The Commonwealth objected to the plaintiff's Motion to Clarify, and argued that the

victim had lost "at the very least $11,965, and arguably $20,000."  (Id. ¶ 47 (quoting Def. Ex. N

at 5 of 13)).  It also argued that Nanje's requested revision to the case record was inconsistent

with his plea agreement.  (Id. ¶ 47).  Nevertheless, on January 30, 2014, a Justice of the BMC

signed the plaintiff's proposed order.  (Id. ¶ 46).  Consequently, the record in Nanje's criminal

case was revised to reflect a loss on the false health care claim charge of "no more than"

$6,000.  (See Def. Ex. M at 9 of 11).

### Final Denial of Nanje's Application for Naturalization

In the meantime, on January 21, 2014, the USCIS issued a final decision denying the

plaintiff's application for naturalization.  (DF ¶ 9; see also Def. Ex. B at 8 of 8).  Therein, the

agency explained that it was vacating its prior decision to deny the application because the

reasons stated in its March 28, 2013 letter were incomplete.  (DF ¶ 10; Def. Ex. B at 3 of 8).  It

then cited two reasons for denying the application a second time.  (DF ¶ 11).  First, the USCIS

determined that Nanje's "original plea agreement, the record of conviction, the revised record

of conviction, and the records supporting the Motion to Revise and Revoke, all established the

amount of loss [to HPHC] to be at least $12,000 in the aggregate[,]" and that the allocation of

restitution between the false health care claim charge and the larceny charge was "irrelevant"

for purposes of the INA.  (Def. Ex. B at 3 of 8).  Accordingly, it found that Nanje had been

convicted of an aggravated felony.  (See id. at 2 of 8 through 3 of 8).  Second, the USCIS found

that Nanje had given "false testimony under oath with the intent to obtain an immigration

benefit" by failing to disclose his membership in various organizations and the details of a prior

arrest that had taken place in Cameroon.  (See id. at 4 of 8 through 7 of 8).  Therefore, it

concluded that he had failed to demonstrate that he was a "person of good moral character"

and was ineligible for naturalization.  (Id. at 7 of 8 through 8 of 8).

On May 19, 2014, Nanje timely appealed the USCIS' decision by filing a Petition for Review of Denial of Naturalization in this court.  (DF ¶ 12; Docket No. 1).  For purposes of this action, the defendants are not pursuing the argument that Nanje is ineligible for naturalization because he gave false testimony under oath.  (Def. Mem. (Docket No. 20) at 12 n.2).  Consequently, the only question at issue is whether Nanje is ineligible because his conviction for filing a false health care claim constituted an "aggravated felony" under the INA.

Additional factual details relevant to this court's analysis are described below where appropriate.

### III.  ANALYSIS

### A.  Summary Judgment Standard of Review

Each of the parties has moved for summary judgment with respect to Nanje's challenge to the denial of his naturalization application.  "The role of summary judgment is 'to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  PC Interiors, Ltd. v. J. Tucci Constr. Co., 794 F. Supp. 2d 274, 275 (D. Mass. 2011) (quoting Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991)) (additional citation omitted).  The burden is on the moving party to show, based upon the discovery and disclosure materials on file, and any affidavits, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[A]n issue is 'genuine' if it 'may reasonably be resolved in favor of either party.'"  Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990)).  "A fact is 'material' only if it possesses the capacity to sway the outcome of the litigation under the applicable law."  Id. (quotations, punctuation and citations omitted).

"Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue." PC Interiors, Ltd., 794 F. Supp. 2d at 275.  The opposing party can avoid summary judgment only by providing properly supported evidence of disputed material facts.  LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841-42 (1st Cir. 1993).  Accordingly, "the nonmoving party 'may not rest upon mere allegation or denials of his pleading[,]'" but must set forth specific facts showing that there is a genuine issue for trial.  Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S. Ct. 2505, 2514, 91 L. Ed. 2d 202 (1986)).

"Cross-motions for summary judgment do not alter the basic Rule 56 standard, but rather simply require [the court] to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed."  Adria Int'l Group, Inc. v. Ferre Dev., Inc., 241 F.3d 103, 107 (1st Cir. 2001).  "'When facing cross-motions for summary judgment, a court must rule on each motion independently, deciding in each instance whether the moving party has met its burden under Rule 56.'"  Peck v. City of Boston, 750 F. Supp. 2d 308, 312 (D. Mass. 2010) (quoting Dan Barclay, Inc. v. Stewart & Stevenson Servs., Inc., 761 F. Supp. 194, 197-98 (D. Mass. 1991)).

**B.** **Eligibility for Naturalization Under the INA**

Under the INA, "[t]he burden is on the person seeking naturalization to establish his or her eligibility." Lucaj v. Dedvukaj, 13 F. Supp. 3d 753, 765 (E.D. Mich. 2014).  Therefore, the applicant must demonstrate, "by a preponderance of the evidence, that he or she meets all of the requirements for naturalization and is thus eligible to become a citizen of the United

States."  Id. (citing 8 C.F.R. § 316.2(b)).  Any doubts regarding eligibility "should be resolved in

favor of the United States and against the applicant."  Id.

Among the requirements an applicant must show in order to qualify for naturalization is

that he or she "has been and still is a person of good moral character[.]"  8 U.S.C. § 1427(a).

"The immigration statute sets out a nonexclusive list of factors that preclude an applicant from

showing good moral character."  Rivera v. U.S. Citizenship & Immigration Servs., 5 F. Supp. 3d

439, 442 (S.D.N.Y. 2014).  Significantly, an applicant is deemed to lack good moral character

under the INA if he or she "has been convicted of an aggravated felony, regardless of when the

conviction occurred."  Id. (citing 8 U.S.C. § 1101(f)(8)).  The term "aggravated felony" is defined

to include "an offense that . . . involves fraud or deceit in which the loss to the victim or victims

exceeds $10,000[.]"  8 U.S.C. § 1101(a)(43)(M)(i).  Accordingly, an applicant who has been

convicted of an offense that involves fraud or deceit in which the loss to the victim exceeds

$10,000 cannot show good moral character for purposes of establishing his eligibility for

naturalization.

In the instant case, Nanje does not dispute that he was convicted in 2006 for making a

false health care claim, and that his crime involved fraud or deceit.  (Pl. Mem. (Docket No. 27)

at 2).  Therefore, the only matter at issue in this case is whether he can prove, by a preponder-

ance of the evidence, that the loss incurred by the victim was $10,000 or less.  This court finds,

for the reasons that follow, that Nanje cannot meet this burden, and that the defendants are

entitled to judgment as a matter of law.

**C.**     **Determination of the Victim's Loss**

In order to determine whether an alien was convicted of an offense involving a loss in excess of the $10,000 threshold, the court must apply a "circumstance-specific" approach to the record.  Nijhawan v. Holder, 557 U.S. 29, 36, 129 S. Ct. 2294, 2300, , 174 L. Ed. 2d 22 (2009).  This requires the court to "look to the facts and circumstances underlying [the] offender's conviction" rather than to the elements of the criminal statute under which he was convicted.  Id. at 34, 129 S. Ct. at 2299.  In other words, this court must consider "the specific circum-stances" surrounding Nanje's filing of the false health care claim for which he was later con-victed to determine the amount of loss sustained by HPHC.  See id. at 40, 129 S. Ct. at 2302 (explaining that "the monetary threshold" set forth in section 1101(a)(43)(M)(i) of the INA "applies to the specific circumstances surrounding an offender's commission of a fraud and deceit crime on a specific occasion").

All of the factual circumstances surrounding Nanje's conviction show that the loss sustained by HPHC as a result of Nanje's fraudulent claim was greater than $10,000.  The "Statement of Probable Cause" attached to the criminal complaint against Nanje alleged that HPHC lost nearly $12,000 by reimbursing Nanje for medical treatment that he admittedly never received.  There is no dispute that Nanje offered, as part of a proposed plea agreement, to admit to sufficient facts to support a finding of guilty, and to pay $20,000 in restitution to HPHC in order to resolve all of the charges against him, which was calculated based on the nearly $12,000 that Nanje had been paid by HPHC and $8,000 that HPHC had incurred in investigating the fraudulent claim.  (Def. Ex. D at 4 of 5; Def. Ex. G; DF ¶ 19).  Nor is there any dispute that as part of his final plea agreement, Nanje agreed to pay $12,000 in restitution to HPHC in order to

dispose of each count, including the counts for filing a false health care claim, for larceny over

$250, and for attempting to commit a crime, and that he paid the amount in full on July 15,

2005.  (DF ¶¶ 20-23; Def. Ex. H; Def. Ex. L at 4 of 15).  Thus, the plaintiff effectively conceded

that he engaged in a single course of conduct by submitting a false claim for medical costs to

HPHC, and that his conduct resulted in a loss to the victim in excess of $10,000.

**Nanje's Reliance on Post-Conviction Revisions to the Docket**

Nanje nevertheless asserts that the record shows otherwise.  In support of his position

that the loss did not meet the statutory threshold, Nanje relies on the success of his February

2012 motion to revise and revoke his sentence so that the amount of restitution that applied to

the charge of filing a false health care claim was under $10,000.  (Pl. Mem. at 2-3).  He also

relies on the BMC's decision to allow his November 2013 motion to clarify the docket to state

that the total loss attributable to the charge of filing a false health care claim was no more than

$6,000, and that such loss was separate and distinct from the loss attributable to the larceny

charge.  (Id. at 3).  However, "when a restitution award has been artificially manipulated for the

sole purpose of influencing an alien's immigration status, that award is not controlling with

respect to the amount of loss."  Conteh v. Gonzales, 461 F.3d 45, 61-62 (1st Cir. 2006).  Under

the circumstances presented here, this court finds that the post-conviction revisions to the

docket in Nanje's criminal case are not controlling.

There can be no serious question that Nanje's post-conviction motions were aimed at

removing the aggravated felony charge from his record so that he would be able to satisfy the

requirements necessary to qualify for naturalization.  For example, in his motion to revise and

revoke his sentence, Nanje, who was represented by counsel, admitted that his pleas "are

considered aggravated felony convictions" which subject him to deportation from the United

States, and that he "has been attempting to remove the aggravated felony from his record such

that he can become a naturalized U.S. citizen." (Def. Ex. L at 6 of 15). He also admitted that his

request to revise the restitution amounts set forth on the docket of his criminal case was

"purely administrative," and "would help with his immigration plight[.]" (Id. at 10 of 15 through

11 of 15). Significantly, however, Nanje did not argue that the actual loss to HPHC was less than

$10,000, or that the motion had any purpose other than to influence his immigration status.

Nor did the court make any such finding when it allowed the plaintiff's motion. (See id. at 2 of

15). Consequently, the record is clear that the subsequent revisions to the docket served no

purpose other than to influence Nanje's immigration status, and this court cannot credit them

in determining the loss to HPHC. See Munroe v. Ashcroft, 353 F.3d 225, 226-27 (3d Cir. 2003)

(ruling that court would not rely on alteration to state court judgment that reduced restitution

to $9,999 where "the amendment of the judgment simply changed the amount of restitution

[and] did not involve a state-court finding as to the amount of loss").

       This court also rejects Nanje's contention that the BMC's orders on the motions to

revise and revoke and to clarify must be given full faith and credit as a matter of law. (Pl. Mem.

at 6-7). As described above, this argument is inconsistent with the relevant case law, which

provides that when a state court's order "is not based on a finding as to the amount of the loss

but is instead intended solely to affect the defendant's immigration status," the order "is not

controlling." Conteh, 461 F.3d at 61 (quoting Munroe, 353 F.3d at 227). Thus, in determining

loss, courts are not obligated to credit efforts to manipulate the underlying record "for the sole

purpose of influencing an alien's immigration status[.]" Id. at 61-62.

Nanje's reliance on the Board of Immigration Appeals' decision in In re Oscar Cota-Vargas, 23 I. & N. Dec. 849 (BIA 2005), does not warrant an alternative conclusion.  There the issue was whether a sentence which had been modified due to its immigration consequences should be considered in determining "the term of imprisonment" for an offense under the removal statutes.  Id. at 851-52.  Relying on the specific statutory language at issue, the court ruled that the modified sentence could be considered.  Id. at 852.  Not only does the instant case involve a different statutory provision, but the First Circuit has also expressly rejected the argument, raised here, that Cota-Vargas stands for the proposition that inquiry into the reason for the modification of a prior court is improper.  See Rumierz v. Gonzales, 456 F.3d 31, 41 & n.11 (1st Cir. 2006) (BIA did not have to credit "Agreement and Stipulation" filed in state court action, which purported to modify the crime of which petitioner had been convicted so that it would not qualify as a predicate offense).  Rather, it is well established that, for purposes of the statutory provision at issue here, the court must look "to the specific circumstances surrounding [the] offender's commission of a fraud and deceit crime on a specific occasion."  Nijhawan, 557 U.S. at 40, 129 S. Ct. at 2302.  A post hoc determination of restitution and loss, made years after the conviction and unsupported by any factual determinations linking the loss to the crimes at issue, does not alter the reality that Nanje committed an offense involving "fraud or deceit in which the loss to the victim or victims exceeds $10,000."  See Munroe, 353 F.3d at 227 (rejecting argument that federal court is bound by the state court's allowance of a motion to reduce the total amount of restitution required to under $10,000 that "was not based on a redetermination of the amount of loss caused by the crimes but was intended to alter the effect of the conviction for immigration purposes").

**Nanje's Reliance on the Criminal Complaint**

This court is similarly unpersuaded by Nanje's suggestion that the criminal complaint supports a loss of less than $10,000 because it names HPHC as the victim with respect to the charge of larceny over $250, but does not specify a victim with respect to the charges for filing false health care claims.  (See Pl. Mem. at 6).  The Statement of Probable Cause attached to the complaint explains that the only victim of Nanje's conduct was HPHC, and that the alleged loss occurred on a single occasion, in connection with a single transaction in which HPHC paid Nanje's claim for $11,965 without first confirming the validity of the claim.  (See Def. Ex. D at 4 of 5).  There is no evidence, either in the criminal complaint or elsewhere in the record, to suggest that there was any other victim or that HPHC's loss was somehow divisible.[2]

Nanje's argument that this court may not consider the Statement of Probable Cause in determining whether the loss to the victim exceeded the $10,000 threshold also lacks merit.  (See Pl. Mem. at 3).  According to the plaintiff, the only facts that are relevant to the circumstances of his conviction "are the facts that he admitted to during his plea colloquy."  (Id.).  Because the plea colloquy is not available in this case, he urges this court to base its decision on the revision and clarification to the docket that were made in response to Nanje's motions to revise and revoke his sentence and to clarify.  (Id. at 4).  However, his reasoning is inconsistent with the applicable authority.

---

[2]  Nanje argues that the docket sheet from his criminal matter indicates that the loss was divisible because it states: "Restitution $12,000 handed to Probation Dept in certified checks as to each Count[.]" (See Pl. Mem. at 6; Def. Ex. C at 3 of 7).  While this evidence shows that Nanje made the required payment "as to each Count" at issue, and that he may have divided that payment into multiple checks, it does not support an inference that there was more than one victim or that the victim suffered separate losses for each offense.

In <u>Nijhawan</u>, the Supreme Court rejected a similar argument by the petitioner in a deportation case.  As the Court explained:

> [Petitioner] says that, for reasons of fairness, we should insist that a jury verdict, or a judge-approved equivalent, embody a determination that the loss involved in a prior fraud or deceit conviction amounted to at least $10,000.  To determine whether that is so, petitioner says, the subsequent immigration court applying subparagraph (M)(i) should examine only charging documents, jury instructions, and any special jury finding (if one has been requested).  If there was a trial but no jury, the subsequent court should examine the equivalent judge-made findings.  <u>If there was a guilty plea (and no trial), the subsequent court should examine the written plea documents or the plea colloquy</u>.  To authorize any broader examination of prior proceedings, petitioner says, would impose an unreasonable administrative burden on immigration judges and would unfairly permit him to be deported on the basis of circumstances that were not before *judicially determined* to have been present and which he may not have had an opportunity, prior to conviction, to dispute.

<u>Nijhawan</u>, 557 U.S. at 41, 129 S. Ct. at 2302-03 (emphasis added).  The Court agreed that "the statute foresees the use of fundamentally fair procedures," but it specifically rejected the petitioner's argument "that fairness requires the evidentiary limitations he proposes."  <u>Id.</u> at 42, 129 S. Ct. at 2303.  Moreover, the Court did not set any specific limitations on the evidence that may be considered to determine the amount of the loss.  <u>See id.</u>; <u>Masoud v. Holder</u>, 487 F. App'x 633, 634-35 (2d Cir. 2012) (adopting the "circumstance-specific" approach established in <u>Nijhawan</u>, and considering criminal information in determining whether victim's loss exceeded $10,000).

The Ninth Circuit's decision in <u>Chang v. INS</u>, 307 F.3d 1185 (9th Cir. 2002), on which the plaintiff relies, provides no support for the conclusion that this court may not consider the Statement of Probable Cause, and does not aid the plaintiff here.  In that case, the Ninth Circuit held that "when a conviction results from a guilty plea, the putative predicate crime constitutes

an aggravated felony only if the record of conviction establishes that the defendant necessarily pleaded guilty to each and every element of an offense enumerated in 8 U.S.C. § 1101(a)(43)." Conteh, 461 F.3d at 54 (describing the Ninth Circuit's holding in Chang). However, the Supreme Court has since rejected that approach, and has held that where the conviction at issue involves a crime of fraud or deceit, the court must consider the factual circumstances in which the offender committed the crime. Nijhawan, 557 U.S. at 32, 129 S. Ct. at 2298. Moreover, the facts in Chang are distinguishable from the facts presented here. In Chang, the court was faced with a plea agreement which described a loss of $605.30 to the victim, and a restitution order in excess of $32,000. Chang, 307 F.3d at 1187-88. The BIA found that Chang was removable because his "conduct related directly to victim losses in excess of $10,000." Id. at 1188. The Ninth Circuit held, however, based on the agreed upon loss stated in the plea agreement, that "the only offense of which Chang was convicted falls about $9,400 shy of qualifying as an aggravated felony." Id. at 1190. In contrast, in the instant case, the facts relating to the victim's loss are entirely consistent throughout the record, and have never been modified by any court. HPHC paid Nanje $11,965 for a fraudulent claim. Therefore, a review of "the facts and circumstances underlying [Nanje's] conviction" establishes that the amount of loss was in excess of $10,000. See Nijhawan, 557 U.S. at 34, 129 S. Ct. at 2299.

The facts in the Statement of Probable Cause are consistent with Nanje's offer of $20,000 in restitution as well as with the ultimate restitution order of $12,000 to dispose of all counts. See Yepes v. U.S. Atty. Gen., 479 Fed. App'x 320, 324 (11th Cir. 2012) (finding that alien failed to meet his burden of proving that "he had not committed a fraud offense for which the loss exceeded $10,000" where the record from his criminal proceedings indicated that he was

ordered to pay more than $10,000 "in restitution to the victim as to all of his counts of convic-tion," which included but were not limited to, offenses involving fraud or deceit).  Consequent-ly, Nanje has not shown, by a preponderance of the evidence, that his conviction for filing a false health care claim was not an aggravated felony within the meaning of the INA.

## IV.  CONCLUSION

For all the reasons detailed herein, the "Defendants' Motion for Summary Judgment" (Docket No. 19) is ALLOWED and the "Plaintiff's Cross-Motion for Summary Judgment" (Docket No. 26) is DENIED.

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge